WALSH *v.* GIBSON.

1. EVIDENCE—REPUTATION—GOOD CHARACTER IMMATERIAL—TRESPASS FOR ASSAULT.

   In an action of trespass for an assault with intent to ravish, any error which may have been committed on the trial, in admitting evidence of the defendant's good character, is cured by subsequently striking out the testimony and charging the jury that it was withdrawn from their consideration.

2. SAME—PROVING REPUTATION BY SPECIFIC INSTANCES.

   Repeated questions, on cross-examination of the plaintiff, having a tendency to prove her evil reputation by specific instances of misconduct, were not reversible error, where the trial court excluded the evidence, and counsel for the plaintiff stated that he did not object to such evidence and had previously admitted similar testimony without objection.

Error to Wayne; Mandell, J. Submitted October 22, 1909. (Docket No. 41.) Decided December 30, 1909.

Trespass *vi et armis* by Anna M. Walsh against Fred Gibson. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*A. G. Shepard* (*George F. & Peter J. Monaghan*, of counsel), for appellant.

*James H. Pound*, for appellee.

McALVAY, J. Plaintiff brought an action for damages for an assault with intent to ravish made upon her, claimed to have been committed at her home, in the city of Detroit, in the month of July, 1906. She was a married woman in good health and about 40 years of age, living with her husband in a house which he purchased upon a contract from defendant several years before. Payments had been made from time to time upon this contract to defendant, who was accustomed occasionally to call at the house for such payments, sometimes each month, or once in two months, previous to the year 1906, when the claimed assault occurred. Plaintiff offered proof tending to show: That defendant came to her house about the middle of June of that year, seized her by the neck, and pulled her upon his lap as he sat down in a chair, asking her repeatedly to kiss him, holding her with one hand on the back of her neck and the other on her right breast; that she escaped from him, went out upon the porch, and met a neighbor who was going by, and conversed with her about half an hour, saying nothing whatever about this incident; that during this conversation defendant came out of the house and requested her to tell Mr. Walsh he would call again on that business. Proof was also offered by her tending to show that on July 9th, about three weeks after the foregoing occurrence, defendant came to her house again, and into the room where she was, and after some preliminary statement that he had

left her husband as his guest at St. Clair flats, and had promised to return that evening, he said that if she would go to his house that night he would not go back until morning. She claims she ordered him to leave the house; that he tried to explain, and after some conversation he suddenly closed the door between the room they were in and the dining room and committed the assault complained of; that the assault was violent; that her clothes were torn, and she was severely injured; that she screamed, and a woman who was washing for her came to her assistance, when defendant desisted.

Defendant is of the age of 49 years, and of less weight than plaintiff. He has been entirely deaf for 24 years, and during the trial testified through an interpreter. The evidence on his part denied plaintiff's claim that an assault was made upon her by him at any time. He testified that he was there on July 2d and saw Walsh and his wife; that his business was to collect interest. He was there next on July 9th, when plaintiff made a payment. She complained of being ill, and apparently fainted, and he caught her to prevent her falling. On his part evidence was admitted attacking the general reputation of plaintiff for chastity and morality as bearing upon the question of damages. The above is a very brief statement of the case, but is sufficient to indicate the issue made, in view of the errors assigned by plaintiff. The case was of considerable length. About 60 witnesses testified. The jury returned a verdict against plaintiff of no cause of action. A motion for a new trial was made and denied. A bill of exceptions was then settled and errors assigned.

Plaintiff's contentions before this court are:

(1) That it was reversible error for counsel to persist in asking questions regarding specific acts of claimed misconduct upon the part of plaintiff, after the court had excluded the questions and had warned counsel to desist.

(2) That the court erred in permitting evidence as to defendant's good character.

In considering these errors assigned, we will reverse their order. It appears that the testimony admitted as to defendant's good character, as far as we are able to find from the record, was given by witness Malcomson, who testified that defendant's general reputation for virtue and chastity was good. This was objected to generally as incompetent. We find later that defendant was asked:

" *Q.* I will ask you if you have had any charge made against you or been arrested in your life ? (Objected to.)
"*The Court:* I will admit it. Note an exception.
"*A.* I have not."

Counsel for plaintiff then said:

" I object to it. A question of that kind cannot be answered unless something was introduced on the other side of the proposition.
"*The Court:* Note an exception."

Later witness Dayman was asked relative to defendant's general reputation in that neighborhood. Plaintiff's counsel then stated fully the reasons for the objection. After such statement, from which it appears the court had already asked for the production of authorities, the court refused to allow witness to answer the question, and on motion of plaintiff's counsel struck out such testimony of former witnesses. In his charge the court said:

" I instruct you that previous good reputation of the defendant is no defense in this action, and testimony on that subject that was introduced, and was afterwards stricken out, is not to be taken into consideration by you in arriving at a verdict. Your verdict must be based on the evidence that is legitimately in the case, and on any logical inference that might be drawn therefrom, and upon nothing else."

The court in his final ruling upon the question and striking out this testimony at plaintiff's request, and in his charge to the jury, above quoted, removed any cause for complaint on the part of plaintiff.

The complaint made of the conduct of defendant's coun-

sel as constituting reversible error in persistently asking questions regarding specific acts of misconduct on the part of plaintiff, after similar questions had been excluded by the court and counsel warned, is treated by both parties as the serious question in the case. The contention on the part of plaintiff is that this was an attempt to show plaintiff's general reputation by proving specific instances of misconduct on her part. The court so ruled and excluded all testimony so offered, sustaining plaintiff's objections. That counsel for defendant was persistent and repeatedly asked questions of the same character is amply shown by the record, and he was warned and cautioned by the court for so doing. Plaintiff's counsel rely upon the following cases as supporting their contention: *Proctor* v. *Houghtaling*, 37 Mich. 41; *McGee* v. *Baumgartner*, 121 Mich. 287 (80 N. W. 21). A reading of all this testimony shows that, in several of the instances complained of, defendant was, by showing where plaintiff had been and what she had done, undertaking to contradict plaintiff's claim that she was seriously injured and disabled, and, when the court and defendant's counsel finally came to an understanding, no further difficulty occurred. Whether the rule laid down in the cases relied upon by plaintiff is applicable to cases of the kind now under consideration, is not necessary to discuss. Early in this trial, which was a long one, counsel for plaintiff in effect invited and challenged defendant's counsel to the line of investigation now so strenuously objected to. On cross-examination of plaintiff she was asked relative to a certain suit brought against her and her husband in Clinton county. This was excluded on the objection of plaintiff's counsel, who, during the discussion, in claiming that it was immaterial and irrelevant, said: .

"We are not prepared to go into it; but anything connected with this woman, on occasions of this kind, we do not object to, and we give them ample opportunity to bring anything."

Afterwards evidence relative to specific instances of

. misconduct of plaintiff was introduced by defendant without objection, which, if true and believed by the jury, warranted the inference that she was a person of tainted character.  This continued on cross-examination throughout plaintiff's case and on examination of some of defendant's witnesses before objection was made.  Then, after the jury had been dismissed, defendant's counsel made an extended statement as to what he proposed to show, which included many specific instances of questionable conduct on the part of plaintiff.  On the return of the jury the case proceeded.  All objections of plaintiff were sustained by the court.  The court, at the time of excluding this class of evidence, after objection was made, and in his charge, did all he could to protect the rights of plaintiff.  We do not think plaintiff should be allowed to complain of this class of evidence under the circumstances.  Evidence of the character of that complained of was in the case without objection, and the right to object had been waived.

The court, upon denying the motion for a new trial, considered both of the points now raised before this court, upon their merits, and held that in his opinion the error committed in allowing good reputation of defendant to be shown was cured by the charge, and that, in view of the instructions given in the charge to the jury and cautions given at the time, the conduct of defendant's counsel did not constitute reversible error.

"The theory upon which defendant resisted the suit was that the charge was a sheer fabrication by the plaintiff and her husband to extort money."

The above quotation is applicable to the case at bar. We think that the conclusion upon the facts, submitted by the court in his charge, and as found by the jury, was a correct one, and we quote further from the words of Mr. Justice GRAVES in the same case:

"The general inquiry is whether any mistakes so far serious were committed as to render it necessary to dis-

turb the result." *Mawich* v. *Elsey*, 47 Mich. 10, at page 12 (8 N. W. 587, 10 N. W. 57).

We find no reversible error in the case.

The judgment is affirmed.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.