No. 79-63

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

    vs.

ROBERT A. KAMRUD,

                Defendant and Appellant.

---

Appeal from:  District Court of the Fourteenth Judicial District,
             In and for the County of Wheatland,
             Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellant:

        Moses, Tolliver & Wright, Billings, Montana
        Stephen C. Moses argued, Billings, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mark Murphy argued, Assistant Attorney General, Helena,
         Montana
        David R. Barnhill argued, County Attorney, Harlowton,
         Montana

---

                Submitted:  March 24, 1980

                  Decided:  MAY 19 1980

Filed: MAY 19 1980

_Thomas J. Kearney_
                      Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendant Robert A. Kamrud appeals from his conviction, following a jury trial, of the offense of criminal sale of dangerous drugs.

On March 9, 1979, John Nelson and Gary Gill were employed as undercover deputy sheriffs of Wheatland County to investigate possible drug sales and drug use in Harlowton, Montana. They set up a trailer at Clark's Trailer Court on a space next to the defendant's trailer and became friendly with the defendant. The officers assumed fictitious names, displayed and used marijuana, and also held parties to ingratiate themselves with persons suspected of selling or using illegal drugs. Nelson and Gill had obtained marijuana from Wheatland County Sheriff William Duncan as a part of their cover. They manicured this marijuana and made it available for smoking to some persons invited by them to parties at their trailer. Defendant attended one such party on March 10, 1979.

Another party was had at the undercover officers' trailer during the early morning hours of March 17, 1979, after the bars had closed. Defendant did not attend this party, although he did appear at the door very briefly to recover a bottle of whiskey he had previously left at the officers' trailer. Officer John Nelson testified on cross-examination by defense counsel that at about 3:05 a.m. that morning, as the defendant was leaving with his bottle of whiskey, Officer Gary Gill approached the defendant and asked him if he could supply Gill with some "stuff." None was supplied. Nelson did not personally witness this conversation. At the time of the hearing on defendant's pretrial motions, Officer Gary Gill testified to the same

effect, but he did not testify at trial. Defendant took the stand at trial and testified that after recovering his bottle of whiskey, he went back to his camper to have some drinks with a woman-friend. Defendant made no mention in his testimony of any conversation with Gill in which Gill approached him for drugs at that time.

Later on the 17th, at approximately 11:30 a.m., the defendant and a girlfriend stopped briefly at the trailer occupied by Nelson and Gill and had a short conversation with them. Nelson testified that at that time he heard defendant, in his presence, ask Gill if he still wanted some drugs, to which Gill responded that they would see the defendant later that afternoon at his home. Gill testified to the same effect during the hearing on defendant's pre-trial motions. The defendant and his girlfriend contradicted this testimony, saying that drugs were not discussed during this conversation.

At approximately 4:20 that afternoon, according to Nelson's testimony, he and Gill went to defendant's trailer, where Gill requested some "stuff" and defendant gave him a vial containing 1.8 grams of marijuana. Defendant refused to take any money. Gill's testimony at the hearing on pretrial motions was similar. Defendant denied that the officers came to his trailer house that afternoon or that he sold or gave them any drugs. He testified that he spent the afternoon checking his trapline and having a beer with his girlfriend in the Argonaut Bar until her workshift began, and then drove home and went to bed and slept the rest of the day.

On March 27, 1979, defendant Robert A. Kamrud was charged in the District Court, Fourteenth Judicial District,

-3-

Wheatland County, Montana, with the crime of criminal sale of dangerous drugs in violation of section 45-9-101, MCA. The information charged that on March 17, 1979, at approximately 4:30 p.m. in his trailer house at Harlowton, Wheatland County, Montana, the defendant "Robert A. Kamrud gave away to Gary L. Gill a quantity of dangerous drugs as defined in Section 50-32-101, MCA, 1979, to-wit: marijuana, a Class I drug."

On June 12, 1979, the defendant's attorney filed various pretrial motions, including a motion to dismiss the information on the grounds of entrapment. A hearing was held on these motions on June 21, 1979. Defendant made the contention that entrapment was established as a matter of law by the allegations contained in the State's affidavit of probable cause filed in support of its application to file the information and by the evidence presented at the hearing. The District Court denied defendant's motion in an order filed June 25, 1979, stating that entrapment had not been established as a matter of law but that it would present a question of fact for the jury.

Kamrud pleaded not guilty and was tried before a jury. He was found guilty and was sentenced to five years in the Montana State Prison.

Appellant presents several issues on appeal but we need consider only one: Did the District Court err in denying defendant's pretrial motion to dismiss on the grounds that entrapment was established as a matter of law?

As a preliminary matter, the State urges that defendant is precluded from asserting the inconsistent defenses of (1) entrapment coupled with (2) a denial of having committed the offense. In State v. Parr (1955), 129 Mont. 175, 283 P.2d

1086, we held: "The rule is that the defense of entrapment is not available to one who denies commission of the offense." Parr, 283 P.2d at 1089, citing Annot., 33 A.L.R.2d 883, 910. Parr involved the sale of whiskey to a minor. The minor, who was incarcerated in the juvenile department of the county jail, was given a ten dollar bill by a probation officer and instructed to purchase a bottle of whiskey in defendant's bar while the county attorney and state liquor inspector watched the transaction. The defendant denied having sold any whiskey to the minor. In affirming defendant's conviction for selling intoxicating liquor to a minor, we stated that the evidence did not entitle defendant to an instruction on the question of entrapment and noted further that the defendant denied having sold the liquor to the minor, holding that the entrapment defense was therefore not available.

We followed the same rule in State v. O'Donnell (1960), 138 Mont. 123, 354 P.2d 1105, 1107, and State v. LaCario (1974), 163 Mont. 511, 518 P.2d 982, 985. There are cases to the contrary in other jurisdictions: United States v. Demma (9th Cir. 1975), 523 F.2d 981; People v. Perez (1965), 62 Cal.2d 769, 44 Cal.Rptr. 326, 401 P.2d 934.

In the present case defendant took the stand and expressly denied that he had ever sold or given any marijuana to the undercover officers. The District Court nevertheless instructed the jury on the issue of entrapment in the words of our statute, section 45-2-213, MCA, and in an additional instruction to which the defendant did not object. Thus, defendant was given the benefit of instructions to which he was not entitled under Montana law when the entrapment defense was submitted to the jury, which rejected the defense in returning a verdict of "guilty."

Although the jury, in returning their verdict of "guilty," found as a matter of fact that there was no entrapment, and although this Court has held, in our decisions in Parr and O'Donnell that the defense of entrapment is not available to one who denies commission of the offense, as this defendant did when he took the stand at trial, the specific holding in those cases was that the trial court did not commit error in refusing to instruct the jury on the question of entrapment. In the present case defendant contends that the District Court committed error by refusing to grant his pretrial motion to dismiss on grounds of entrapment after the hearing on pretrial motions. At that time defendant had not denied committing the acts which formed the basis of the offense. The testimony of Officer Gill at the pretrial hearing on motions was substantially identical to Officer Nelson's at the trial in regard to the facts relating to the entrapment defense. Thus, defendant argues on appeal that the testimony at the pretrial hearing and the allegations in the State's affidavit establish entrapment as a matter of law.

The entrapment defense is not a constitutional one, as the United States Supreme Court recognized in United States v. Russell (1973), 411 U.S. 423, 433, 93 S.Ct. 1637, 36 L.Ed.2d 366, where it held that "the defense is not of a constitutional dimension." Therefore, we must look primarily to Montana statutes and case law.

The federal cases are nevertheless relevant to the extent that they apply the same test used in Montana. The Commission Comment to our statute defining entrapment, section 45-2-213, MCA, states that "[t]he defense of entrapment generally follows the rule stated by the majority in the

_Sorrells_ case." (Sorrells v. United States (1932), 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, 86 A.L.R. 249.) Entrapment is, of course, an affirmative defense, and the burden of proving it rests on the defendant. _LaCario_, 518 P.2d 982, 985; State v. White (1969), 153 Mont. 193, 456 P.2d 54, 56; _O'Donnell_, 354 P.2d 1105, 1106; _Parr_, 283 P.2d 1086, 1089.

This Court has held that the defense of entrapment may be established as a matter of law. In State v. Grenfell (1977), 172 Mont. 345, 564 P.2d 171, we overturned the defendant's conviction of sale of dangerous drugs on the grounds that the defense of entrapment had been established as a matter of law. Montana has recognized the entrapment defense by case law, and it is now codified in section 45-2-213, MCA:

> "_Entrapment._ A person is not guilty of an offense if his conduct is incited or induced by a public servant or his agent for the purpose of obtaining evidence for the prosecution of such person. However, this section is inapplicable if a public servant or his agent merely affords to such person the opportunity or facility for committing an offense in furtherance of criminal purpose which such person has originated."

This Court has held:

> "This statute is consonant with earlier decisions of this Court which set forth the following elements of entrapment: (1) Criminal intent or design originating in the mind of the police officer or informer; (2) absence of criminal intent or design originating in the mind of the accused; and (3) luring or inducing the accused into committing a crime he had no intention of committing. State ex rel. Hamlin, Jr. v. District Court, 163 Mont. 16, 515 P.2d 74; State v. Karathanos, 158 Mont. 461, 493 P.2d 326."
> State v. Grenfell, supra, 564 P.2d at 173.

See also State v. Gallaher (1978), ___ Mont. _____, 580 P.2d 930, 935, 35 St.Rep. 848.

This Court has on previous occasions discussed in detail the matters to be considered in determining whether or not the entrapment defense has been established:

> "Entrapment occurs only when the criminal
> intent or design originates in the mind of
> the police officer or informer and not with
> the accused, and the accused is lured or in-
> duced into committing a crime he had no inten-
> tion of committing. Only when the criminal
> design originates, not with the accused, but
> in the mind of government officers and the
> accused is by persuasion, deceitful represen-
> tations, or inducement, lured into the commis-
> sion of a criminal act, can a case of entrapment
> be made out. In short, there is a controlling
> distinction between inducing a person to do an
> unlawful act and setting a trap to catch him in
> the execution of a criminal design of his own
> conception. . ." State v. Karathanos (1972),
> 158 Mont. 461, 493 P.2d 326, 331 (holding that
> there was no entrapment where the defendant ap-
> proached a police informant in a bar and offered
> to sell her drugs, later completing the trans-
> action).

See also, State v. Frates (1972), 160 Mont. 431, 503 P.2d

47, 51.

In Grenfell the defendant was approached by an informant,

whom the Court characterized as a frustrated and unfulfilled

policeman attempting to land a job as a deputy sheriff with

the Silver Bow County sheriff's department. The informant

and his wife had cultivated a close friendship with defen-

dant and his wife over a period of six months. On several

occasions within a period of four days, the informant per-

sistently requested the defendant to procure him some drugs,

which the defendant did with reluctance. Defendant obtained

the drugs from two men he had worked with and knew to be

involved with drugs. In coaxing the defendant to obtain and

sell him drugs, the informant promised defendant that he

could get him a job in Utah with a mining company, and that

the trip to Utah could be financed by the profits from the

sale of a large quantity of drugs to the informant's friend.

In overturning defendant's conviction for selling the drugs

to the informant on the grounds that there was entrapment as

a matter of law, we stated that this was not a case where

the drug informer made only a casual offer to buy and that
the entire scheme originated in the informer's mind.

> "The record shows that Grenfell was not pre-
> disposed to commit this offense.  There was
> no evidence that prior to January 26, 1975,
> Grenfell had ever used or sold drugs.  Gren-
> fell's close friendship with [the informer]
> spanned approximately six months, yet [the
> informer] testified that Grenfell never of-
> fered to sell him drugs." Grenfell, 564 P.2d
> at 173-74.

The facts of the present case fall within the cases
cited where we have held entrapment as a matter of law, and
we believe that they are sufficient to establish entrapment
as a matter of law.  The criminal intent or design to sell
marijuana did not originate with the defendant, but with the
undercover officers Gary Gill and John Nelson, who induced
defendant to give them a minute quantity of marijuana.  The
officers did more than merely afford Kamrud with the oppor-
tunity to commit the offense by making a casual offer to
buy.  As in Grenfell, they befriended him and approached him
on more than one occasion for the purpose of soliciting
drugs.

Likewise, there was no evidence whatsoever that Kamrud
had ever sold or offered to sell drugs to anyone prior to
his "sale" to Gill and Nelson, which was made at their
request; i.e., there was no evidence that he was predisposed
to commit the offense or that the idea originated with
defendant.  This is further buttressed by the fact that the
minute quantity of marijuana involved here, 1.8 grams, is
not an amount that would ordinarily be exchanged by a
person who had the criminal intent to make a sale or even a
gift.  The officers did far more than merely afford Kamrud
with the opportunity to commit the offense--they came up
with the whole idea.  The officers established themselves as

drug users and they themselves violated the very law with which defendant is charged by preparing and giving away marijuana supplied by the Wheatland County sheriff's department. In short, the record does not disclose that there was any drug traffic in Harlowton by the defendant or anyone else, other than that engaged in by these law enforcement officers. While the defendant may well have had the intent to possess marijuana, the idea for him to sell it or to give it away certainly originated with the police officers and not with defendant. Therefore, we hold that under these facts, entrapment was established as a matter of law. Grenfell, 564 P.2d at 173-74.

The judgment of the District Court is reversed with directions to dismiss the information.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice Daniel J. Shea will file a specially concurring opinion at a later date.

SPECIAL CONCURRENCE OF MR. JUSTICE DANIEL J. SHEA

------------------------------------------------------------

No. 79-63

------------------------------------------------------------

THE STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

ROBERT A. KAMRUD,

       Defendant and Appellant.

------------------------------------------------------------

FILED

MAY 22 1980

*Thomas J. Kearney*

CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea specially concurring:

I concur in the opinion of the majority reversing defendant's conviction and holding as a matter of law that defendant was the victim of entrapment. Although not necessary to the decision, I believe that the sentencing aspects of this case are deserving of brief mention.

After the jury returned with its verdict the trial court set a sentencing date but did not order a presentence investigation. Section 46-18-111, MCA, provides that a presentence investigation shall be ordered by the sentencing judge unless the judge makes a specific determination that one is not needed. Here the record is silent with regard to a presentence investigation report. This can hardly stand for the proposition that the sentencing judge determined that a presentence investigation report was not needed. Thus, assuming that this Court did not reverse the conviction, because the sentencing court failed to comply with Section 46-18-111, MCA, the defendant would be entitled to be sentenced again.

Defendant further argues that the actual sentence imposed was excessive in that he had never before been convicted of any offense and that he had been designated as a nondangerous offender. He adds to this argument by contending that the sentencing court "couched its sentencing on the grounds that the sheriff does not often catch a drug dealer in Harlo (sic) and that his personal belief was that there were a lot of drugs going around in Harlowton, Montana." This conclusion is, however, not supported by a record; the defendant failed to provide this court with a copy of the transcript of the sentencing hearing.

If such assertions are to be made on appeal, it behooves

counsel to provide the supporting documentation such as a transcript. It may well be true that defense counsel is right; but defense counsel also would lose his point on appeal because he had neglected to provide the documentation for his claim. Justice would certainly be the loser in such event.

_____
Justice